1

2

3        **UNITED STATES DISTRICT COURT**

4        **NORTHERN DISTRICT OF CALIFORNIA**

5        **SAN JOSE DIVISION**

6

7   EMPLOYERS ASSURANCE                    Case No.  21-cv-06800-BLF
    COMPANY,
8
                    Plaintiff,              **ORDER GRANTING IN PART AND**
9                                           **DENYING IN PART EMPLOYERS'**
          v.                                **MOTION TO DISMISS COUNTERCLAIM,**
10                                          **WITHOUT LEAVE TO AMEND**

11  THE FORD STORE MORGAN HILL,            [Re:  ECF 20]
    INC.,
12
                    Defendant.
13  _____

14  THE FORD STORE MORGAN HILL,
    INC.,
15
                    Counterclaimant,
16
          v.
17
18  EMPLOYERS ASSURANCE
    COMPANY,
19
                    Counterdefendant.

20

21          This action arises out of an insurance coverage dispute between Plaintiff-Counterdefendant

22  Employers Assurance Company ("Employers") and Defendant-Counterclaimant The Ford Store

23  Morgan Hill, Inc. ("Ford").  The action was filed by Employers, which seeks a declaration that a

24  workers' compensation and employment liability policy it issued to Ford did not give rise to a

25  duty to defend or indemnify Ford in a state court action arising from the shooting death of one of

26  Ford's employees, Xavier Anthony Souto ("Souto").  Ford filed an answer and counterclaim,

27  asserting that Employers breached its policy obligations with respect to the state court action and

28  also with respect to a workers' compensation action arising out of Souto's death.

United States District Court
Northern District of California

Before the Court is Employers' motion to dismiss Ford's counterclaim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART, WITHOUT LEAVE TO AMEND.

## I.     BACKGROUND[1]

### A.     Policy

Employers issued a workers' compensation and employers liability insurance policy to Ford, effective March 1, 2019 to March 1, 2020.  Counterclaim ("CC") ¶ 25, ECF 12.  The Policy contains six parts, three of which are relevant here:  Part One, Workers Compensation Insurance; Part Two, Employers Liability Insurance; and Part Four, Your Duties if Injury Occurs.  *See* Policy, Exh. E to CC.

### *Part One, Workers Compensation Insurance*

Part One of the Policy provides coverage for Ford employees' bodily injuries that are covered by workers' compensation law, and it obligates Employers to defend Ford against claims brought before the California Workers' Compensation Appeals Board ("WCAB").  The relevant provisions of Part One are set forth below.

> **A. How This Insurance Applies**
> This workers compensation insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.
> 1.     Bodily injury by accident must occur during the policy period.
> 2.     Bodily injury by disease must be caused or aggravated by the conditions of your employment.  The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

Policy at 18.[2]

> **B. We Will Pay**
> We will pay promptly when due the benefits required of you by the workers compensation law.

*Id.*

---

[1] Ford's well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

[2] Citations to the Policy refer to the ECF page numbers.

United States District Court
Northern District of California

**C. We Will Defend**

We have the right and duty to defend at our expense any claim or proceeding against you before the California Workers' Compensation Appeals Board or its equivalent in any other state (and any appeal of a decision therefrom) for the benefits payable by this workers' compensation insurance. We have the right to investigate and settle these claims or proceedings.

We have no duty to defend a claim, proceeding, or suit that is not covered by this insurance.

Nothing contained in this Section shall amend, modify, restrict, or otherwise alter any obligations or conditions under Part Two – Employer's Liability Insurance of the policy.

Policy at 18, 32.

*Part Two, Employers Liability Insurance*

Part Two of the Policy provides coverage for Ford employees' bodily injuries that meet certain policy requirements. The relevant provisions of Part Two are set forth below.

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
3. Bodily injury by accident must occur during the policy period.
4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.
5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

Policy at 19.

**B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;
2. For care and loss of services; and
3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

United States District Court
Northern District of California

4.      Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

*Id.*

**C. Exclusions**
This insurance does not cover:

. . . .

4.      Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

. . . .

7.      Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions. . . .

Policy at 20.

**D.  We Will Defend**
We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.
We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

*Id.*

### *Part Four, Your Duties if Injury Occurs*

Part Four of the Policy imposes certain duties on Ford, including:

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

. . . .

4.      Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

. . . .

6.      Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

Policy at 21-22.

4

**B.      The Underlying Incident**

On June 25, 2019, Souto fired a Ford employee named Steven Leet ("Leet").  Ans. ¶ 10, ECF 12.[3]  Leet went to his car in the Ford parking lot and returned with a firearm, which he used to kill Souto and another employee, and then himself.  *Id.*

**C.      The Workers' Compensation Proceeding**

On August 27, 2019, Maria de Lourdes Castillo Perez ("Perez") filed a case against Ford and Employers with the WCAB in Santa Ana, California ("WC Case"), seeking workers' compensation benefits relating to Souto's death.  CC ¶ 9.  Perez identified herself and her son, Anthony Souto, as Souto's dependents.  *Id.*  Employers retained Darlene Q. de Guzman, Esq. and the law firm of Mullen & Filippi, LLP (collectively, "M&F") to represent both Employers and Ford in the WC Case.  *Id.* ¶ 10.  Ford did not consent to M&F representing both Ford and Employers, and M&F never communicated directly with Ford.  *Id.* ¶¶ 11, 28.  M&F did not attempt to identify all potential dependents of Souto.  *Id.* ¶ 28.

On April 21, 2020, the WCAB issued an order approving a compromise and release of the WC Case, which resulted in payment of $228,800 to Perez and her son, and a payment of $31,200 in attorneys' fees to their counsel.  *Id.* ¶ 15.  Employers paid those awards.  Ans. ¶ 12.

As it turns out, there were other potential dependents who were not identified in the WC Case.  CC ¶ 16.  Those individuals filed a civil suit ("the Underlying Action") against Ford after conclusion of the WC Case.  *Id.*  Ford claims that if all potential dependents had been identified and brought into the WC Case, the Underlying Action would not have been filed.  *Id.* ¶ 29.  As discussed below, Ford spent a substantial amount of money to resolve the Underlying Action.

**D.      The Underlying Action**

On June 22, 2021, the Underlying Action was filed against Ford in the Santa Clara County Superior Court by Souto's parents, Maria and Joseph Souto; Souto's son, Xavier Anthony Souto, Jr.; and the personal representative of Souto's estate, Ida Maria Maciel.  CC ¶ 16.  Leet's estate

---

[3] The Court may consider facts admitted in Ford's answer as well as facts alleged in Ford's counterclaim.  *See Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-CV-01849-HSG, 2016 WL 4608213, at *5 (N.D. Cal. Sept. 6, 2016).

United States District Court
Northern District of California

also was named as a defendant.  *See* Underlying Action Compl. ("UA Compl."), Exh. D to CC.

Only one claim, for Negligence/Gross Negligence, was asserted against Ford.  UA Compl. ¶¶ 37-54.  The complaint alleged that Ford owed a duty to its employees to provide a safe work environment and to protect its employees from known risks and dangers.  *Id*. ¶ 38.  Prior to the shooting, multiple Ford employees allegedly expressed concern that Leet was dangerous, unstable, and violent.  *Id*. ¶ 42.  According to the complaint, Ford nonetheless instructed Souto to fire Leet, even though Souto expressed fear for his safety and firing employees was not a part of Souto's regular job duties.  *Id*. ¶¶ 45-46.  Ford allegedly failed to follow established protocols for termination of an employee and carelessly allowed Leet to leave the building without any escort or security.  *Id*. ¶¶ 44, 47.  Ford also allegedly failed to take action when the store's management was informed that Leet had remained on the property after his termination and employees feared for their safety.  *Id*. ¶¶ 48-51.  The complaint alleged that Ford breached its duty to provide Souto with a safe work environment and acted with gross negligence.  *Id*. ¶¶ 39, 52.

Ford tendered the defense of the Underlying Action to Employers.  CC ¶ 17.  Employers denied coverage through its in-house adjuster, and again through its outside coverage counsel.  *Id*. ¶ 19.  Ford retained its own defense counsel and settled the Underlying Action on August 17, 2021.  *Id*. ¶ 20.  On August 18, 2021, Employers' outside coverage counsel informed Ford that Employers would defend the Underlying Action, but by that time Ford already had entered into a settlement.  *Id*. ¶ 21.  Employers has refused to indemnify Ford for the monies Ford expended to defend and settle the Underlying Action.  *Id*. ¶ 32.

**E.      Present Action**

Employers filed the present action on September 1, 2021, asserting a single claim for declaratory relief.  *See* Compl., ECF 1.  Specifically, Employers seeks a declaration that it had no obligation to defend or indemnify Ford in the Underlying Action.  *Id*.  Ford filed an answer and counterclaim on October 22, 2021.  In its counterclaim, Ford asserts that Employers breached duties it owed to Ford under the Policy with respect to both the WC Case and the Underlying Action.  *See* CC, ECF 12.  The exhibits to the counterclaim include the compromise and release filed in the WC Case and the complaint filed in the Underlying Action.  CC Exhs. C & D.

United States District Court
Northern District of California

## II.  LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court is limited to consideration of the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *See Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

## III.  DISCUSSION

Employers seeks dismissal of Ford's counterclaim in its entirety under Rule 12(b)(6).  The counterclaim asserts claims for:  (1) Declaratory Relief – Duty to Defend; (2) Declaratory Relief – Duty to Indemnify; (3) Breach of Contract; and (4) Breach of the Implied Covenant of Good Faith and Fair Dealing.  The Court addresses each claim in turn.

### A.     Claim 1 for Declaratory Relief – Duty to Defend

Claim 1 seeks a declaration that Employers had a duty to defend Ford in the Underlying Action, and also seeks reimbursement of expenses Ford incurred after tendering the defense of the Underlying Action to Employers.  CC ¶¶ 36-37.

#### 1.     Law on Duty to Defend

Under California law,[4] "[a]n insurer must defend its insured against claims that create a *potential* for indemnity under the policy." *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 654 (2005).  "The duty to defend is broader than the duty to indemnify, and it may apply

---

[4] The substantive law of the forum state, California, governs in this diversity action.  *See Encompass Ins. Co. v. Coast Nat'l Ins. Co.*, 764 F.3d 981, 984 (9th Cir. 2014).

1    even in an action where no damages are ultimately awarded." *Id.*

2          "Determination of the duty to defend depends, in the first instance, on a comparison

3    between the allegations of the complaint and the terms of the policy." *Scottsdale*, 36 Cal. 4th at

4    654. "But the duty also exists where extrinsic facts known to the insurer suggest that the claim

5    may be covered." *Id.* "If any facts stated or fairly inferable in the complaint, or otherwise known

6    or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty

7    to defend arises and is not extinguished until the insurer negates all facts suggesting potential

8    coverage." *Id.* at 655. "On the other hand, if, as a matter of law, neither the complaint nor the

9    known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in

10   the first instance." *Id.*

<p align="center">**2.      Analysis**</p>

12          Ford asserts that Employers had a duty to defend the Underlying Action under the

13   Employers Liability Insurance part of the Policy. Employers contends that it did not have a duty

14   to defend the Underlying Action, advancing three arguments in support of its position. First,

15   Employers argues that the workers' compensation exclusion bars coverage for the Underlying

16   Action. Second, Employers argues that the employment practices exclusion bars coverage for the

17   Underlying Action. Third, Employers argues that there is no coverage because Ford was not

18   formally served with the Underlying Action.

<p align="center">**a.      Workers' Compensation Exclusion**</p>

20          The Employers Liability Insurance part of the Policy excludes from coverage "[a]ny

21   obligation imposed by a workers compensation, occupational disease, unemployment

22   compensation, or disability benefits law, or any similar law." Policy at 20. To understand the

23   scope of this exclusion, the Court considers *Culligan v. State Comp. Ins. Fund*, 81 Cal. App. 4th

24   429 (2000), where the California Court of Appeal considered an identical exclusion contained in a

25   workers' compensation and employers liability policy. The employer, Culligan, was sued by

26   employees for bodily injuries arising out of exposure to toxic fumes. *See id.* at 432. Culligan

27   tendered the defense to his insurer, which rejected the tender. *See id.* at 433. Culligan settled the

28   civil suit on his own and sued his insurer for breach of contract, declaratory relief, and related

<p align="left" style="margin-left:2em;">United States District Court<br>Northern District of California</p>

<p align="center">8</p>

1   claims.  *See id.*  The trial court granted summary judgment for the insurer.  *See id.*

2        The California Court of Appeal affirmed, holding that the policy's workers' compensation

3   exclusion barred coverage for the civil suit.  *See Culligan*, 81 Cal. App. 4th at 439-40.  The court

4   observed as follows:

> [E]mployers' liability insurance is traditionally written in conjunction with
> workers' compensation policies, and is intended to serve as a 'gap-filler,' providing
> protection to the employer in those situations where the employee has a right to
> bring a tort action despite the provisions of the workers' compensation statute or
> the employee is not subject to the workers' compensation law.  Generally, these
> two kinds of coverage are mutually exclusive.

9   *Id.* at 436 (quotation marks and citation omitted).  It is commonplace for "insurance policies to

10  include an exclusion from the policy for benefits obtainable under workers' compensation law."

11  *Id.* at 439 (quotation marks, citation, and brackets omitted).  The *Culligan* court determined as a

12  matter of law that the workers' compensation exclusion in Culligan's policy barred coverage for

13  the underlying civil suit, because any claims for bodily injury alleged in that suit "concerned

14  employees who were employed by Culligan and subject to the remedy of the workers'

15  compensation law."  *Id.* at 439-40.

16       Employers argues that, "As in *Culligan*, the claims in the Underlying Action concern

17  Ford's responsibility for the bodily injury of its employee and are thus subject to the exclusive

18  remedy of workers' compensation law and are barred by the compensation exclusion in the

19  employers liability policy."  Mot. at 12, ECF 19.  Ford disputes this characterization, arguing that

20  the Underlying Action was not subject to workers' compensation exclusivity because it was based

21  on conduct falling outside the compensation bargain.

22       Workers' compensation exclusivity does not apply "under certain circumstances,

23  sometimes variously identified as conduct where the employer or insurer stepped out of their

24  proper roles, or conduct of an employer having a questionable relationship to the employment, but

25  which may be essentially defined as not stemming from a risk reasonably encompassed within the

26  compensation bargain."  *Shoemaker v. Myers*, 52 Cal. 3d 1, 16 (1990) (internal quotation marks

27  and citations omitted).  For example, injuries caused by the criminal acts of an employer or an

28  insurer generally will fall outside the compensation bargain.  *See Charles J. Vacanti, M.D., Inc. v.*

United States District Court
Northern District of California

United States District Court
Northern District of California

*State Comp. Ins. Fund*, 24 Cal. 4th 800, 822 (2001) (An employer's "violent and coercive criminal conduct committed against an employee's person is always illegal regardless of the employer's state of mind and is never subject to the exclusive remedy provisions.").  Ford cites several cases involving criminal acts of the insurer or the employer, discussed below.

In *Vacanti*, medical providers brought a civil suit against workers' compensation insurers, alleging that the insurers conspired to put them out of business by delaying payment or refusing to pay for services rendered by plaintiffs to injured workers.  *See Vacanti*, 24 Cal. 4th at 808.  The California Supreme Court held that the plaintiffs' injuries – economic damage to their business – were generally within the scope of workers' compensation law, because the injuries were collateral to or derivative of an injury compensable under workers' compensation law, and/or arose out of the workers' compensation claims process.  *See id.* at 815.  Accordingly, the plaintiffs' claims for abuse of process and fraud were barred by workers' compensation exclusivity, because those claims in essence alleged that defendants engaged in a pattern or practice of delaying or denying payments in bad faith, and processing payments was a normal part of the claims process.  *See id.* at 823-24.  The *Vacanti* court found that the plaintiffs' claims for antitrust and RICO violations were not barred, however, because those claims alleged conduct going beyond delay or non-payment of claims, as the insurers allegedly conspired to influence the processing of claims they did not insure.  *See id.* at 825 ("This concerted effort by insurers to interject themselves into lien claims they *did not insure* is *not* a normal part of the claims process.").

In *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 706-07 (1994), a department store salesclerk was held in a windowless room and questioned by two store managers and two security guards for more than an hour about her alleged theft of $4.95.  Her requests to leave the room and to call her mother were denied and a security guard physically blocked the exit when she tried to walk away.  *See id.* at 707.  The California Supreme Court held that her civil suit for false imprisonment was not barred by workers' compensation exclusivity because "false imprisonment committed by an employer against an employee is always outside the scope of the compensation bargain."  *Id.* at 723.

United States District Court
Northern District of California

In *Herrick v. Quality Hotels, Inns & Resorts, Inc.*, 19 Cal. App. 4th 1608 (1993), a hotel's director of security pulled a gun while terminating the employment of a security guard.  The guard initially refused to sign the termination slip and said he wanted to speak with the hotel's general manager, at which point the director of security threatened to blow the guard's head off if he tried to speak with the manager and if he did not leave the hotel property immediately.  *See id*. at 1613.  The hotel's general manager later ratified the director of security's conduct.  *See id*. at 1615.  The California Court of Appeal held that under those circumstances, the guard's civil suit for intentional infliction of emotional distress was not barred by workers' compensation law, because the guard's injuries arose from a willful physical assault by the employer that was outside the scope of the compensation bargain.  *See id*. at 1616-18.

Finally, in *Soares v. City of Oakland*, 9 Cal. App. 4th 1822 (1992), a jail employee sued his supervisor and their common employer, the City of Oakland, for battery.  The supervisor had physically intervened when concerned that the employee was becoming violent with an inmate.  *See id.* at 1824.  The trial court declined to give the standard jury instruction on battery, and instead gave a special instruction stating that the City could be held liable for the battery if it ratified the supervisor's conduct and if the supervisor acted with the specific intent to injure the employee.  *See id.* at 1825-26.  The jury returned a special verdict finding that the supervisor did not have a specific intent to injure the employee and exonerating both the supervisor and the City.  *See id.*  The California Court of Appeal affirmed, holding that the instruction was consistent with workers' compensation law, which excepts injuries arising from the battery of a co-employee from the exclusive remedy of workers' compensation *only* where the battery was "committed with a specific intent to injure."  *See id.* at 1824.  The *Soares* court concluded that the jury's finding that the supervisor lacked any specific intent to injure the employee disposed of the civil battery claim.  *See id.* at 1831.

Ford argues that these cases stand for the proposition that injuries arising out of threats of violence and actual violence fall outside the normal risks encompassed by the compensation bargain.  Because the present case involves greater violence than the crimes discussed in *Vacanti*, *Fermino*, *Herrick*, and *Soares*, Ford argues that this case falls outside the scope of workers'

11

United States District Court
Northern District of California

1    compensation law.  The cited cases are factually distinguishable from the present case, however.

2    *Vacanti*, *Fermino*, and *Herrick* involved alleged criminal conduct *by the employer*.  Here, the

3    complaint in the Underlying Action did not allege that Ford shot Souto, ratified the shooting, or

4    engaged in any criminal conduct.  *Soares* arose from an alleged battery by a co-employee, and the

5    question before the court was whether a specific statutory exception to workers' compensation law

6    applied to all batteries by a co-employee or only those batteries committed with a specific intent to

7    injure.  Leet was not a co-employee of Souto at the time of the shooting, as his employment had

8    been terminated, and Ford does not suggest that the statutory exception discussed in *Soares* is

9    applicable here.  The complaint in the Underlying Action alleged that Ford breached its duty to

10   provide Souto with a safe work environment and acted with gross negligence.  UA Compl. ¶¶ 39,

11   52.  Employers cites cases holding that injuries caused by an employer's failure to maintain a safe

12   workplace generally will fall within the compensation bargain.

13        In *Vuillemainroy v. Am. Rock & Asphalt, Inc.*, 70 Cal. App. 4th 1280 (1999), an employee

14   was killed in a workplace accident when the brakes failed on a truck he was driving.  The

15   employee's family filed a civil suit against the employer, asserting that the death was caused by

16   the employer's criminal negligence and that the employer's conduct amounted to manslaughter.

17   *See id.* at 1282.  The family's involuntary manslaughter claim was based on allegations that the

18   employer's trucks and haul roads were chronically and deliberately left unmaintained and unsafe,

19   demonstrating the employer's disregard for the lives and safety of its employees.  *See id.*  The trial

20   court granted summary judgment for the employer, finding that the civil suit was barred by

21   workers' compensation exclusivity.  *See id.* at 1282-83.  The California Court of Appeal affirmed,

22   relying on "a considerable body of precedent holding that injuries caused by unsafe working

23   conditions are compensable solely under workers' compensation, even if the employer recklessly

24   or deliberately failed to correct known safety violations."  *Id*. at 1286.  The *Vuillemainroy* court

25   observed that "[a]ffixing the label of manslaughter to the creation of unsafe working conditions

26   does not avoid the exclusivity bar."  *Id*.

27        *Gund v. Cnty. of Trinity*, 10 Cal. 5th 503 (2020), involved a civil suit by two civilians who

28   were attacked when they checked on a neighbor at the request of law enforcement.  A corporal in

the Sheriff's office requested that Norma and James Gund check on their neighbor, who had called 911 and asked for help. *See id.* at 507. The Gunds walked into a murder scene and were attacked by the murderer. *See id.* at 509. They filed a civil suit against the county and the corporal, alleging among other things that the corporal had misled them as to the nature of the 911 call and withheld the facts that the neighbor had spoken in a whisper and that return calls went straight to voicemail. *See id.* The California Supreme Court held that the civil suit was barred by the exclusive remedy of workers' compensation. *See id.* at 527. "When members of the public engage in 'active law enforcement service' at a peace officer's request, California law treats those members of the public as employees eligible for workers' compensation benefits." *Id.* at 506. The injuries suffered by the Gunds in their role as public employees was within the normal risks of that role. *See id.* at 526-27.

The cases cited by Employers fit the facts of the present case better than those cited by Ford. *Vuillemainroy* makes clear that a claim based on an employer's alleged negligent failure to ensure a safe work environment is barred by workers' compensation exclusivity, even where the employer's negligence is alleged to have risen to a criminal level. *Gund* makes clear that a third party's violent attack does not take injuries outside the scope of workers' compensation if the attack occurs while the employee is acting within the scope of employment. Here, the complaint in the Underlying Action alleges that although Souto's duties did not normally include terminating other employees, he was instructed to fire Leet and did so. UA Compl. ¶¶ 45-46. There is no allegation in the Underlying Action that Souto was acting outside the scope of his employment when he went to work on the day in question and carried out the duties he was assigned by Ford.

The Court finds unpersuasive Ford's argument that Souto's injuries are not compensable under workers' compensation law because getting shot was not within the particular risks Souto assumed when he went to work for Ford. In *Culligan*, clerical workers and bookkeepers suffered injuries when they were exposed to noxious fumes from other offices in the building. There is no indication in that decision that exposure to noxious fumes was within the particular risks ordinarily assumed by office workers, nor did the *Culligan* court frame the inquiry in that manner. The cases cited by the parties appear to draw a bright line between injuries attributable to the

employer's failure to provide a safe work environment, which are subject to workers'
compensation even when the injuries result from the violence of third parties, and injuries
attributable to the employer's violence or other egregious misconduct, which are not subject to
workers' compensation.

The Court concludes as a matter of law that the sole claim asserted against Ford in the
Underlying Action – for negligent and grossly negligent breach of Ford's duty to provide Souto
with a safe work environment – falls within the scope of workers' compensation law and thus falls
within the scope of the Policy's workers' compensation exclusion.  As noted above, that provision
excludes from coverage "[a]ny obligation imposed by a workers compensation, occupational
disease, unemployment compensation, or disability benefits law, or any similar law."  Policy at 20.
The fact that some of Souto's dependents obtained workers' compensation benefits for Souto's
death strengthens the Court's conclusion and seriously undermines Ford's argument that the claim
in the Underlying Action based on Souto's death is not within the scope of workers' compensation
law.

An insurer does not have a duty to defend "if, as a matter of law, neither the [underlying]
complaint nor the known extrinsic facts indicate any basis for potential coverage."  *Scottsdale Ins.
Co.*, 36 Cal. 4th at 655.  For the reasons discussed above, the complaint in the Underlying Action
did not indicate any basis for potential coverage under the Employers Liability Insurance part of
the Policy, because the only claim asserted against Ford fell within the workers' compensation
exclusion.  Ford has not alleged that Employers was aware of any extrinsic facts indicating a basis
for potential coverage, nor has Ford suggested that such facts could be pled.  The Court therefore
concludes as a matter of law that Employers did not have a duty to defend Ford in the Underlying
Action.  Under these circumstances, it is appropriate to dismiss Claim 1 without leave to amend.
*See Stephenson v. Argonaut Ins. Co.*, 125 Cal. App. 4th 962, 966 (2004) (affirming dismissal of
action against insurer for failing to provide defense).

In *Stephenson*, an employer sued its workers' compensation and employers liability insurer
for failure to defend it in a civil action brought by an injured worker named Guardado.  *See id.*
The policy contained two parts, with part one providing coverage for benefits required under

workers' compensation law and part two providing coverage for bodily injury arising out of employment. *See id.* at 967. Part two contained a workers' compensation exclusion identical to the exclusion at issue in the present case, excluding coverage for "any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law. . . ." *Id.* at 968. The trial court sustained the insurer's demurrer to the operative complaint without leave to amend and dismissed the action. *See id.* at 966. The insured appealed the judgment. *See id.*

On appeal, the California Court of Appeal framed the issue before it as follows:

> The primary issue presented in this case is whether plaintiff has shown either it alleged facts establishing the Guardado action created a potential for coverage under defendant's insurance policy or a reasonable possibility exists that it can amend the pleading to assert a potential for coverage. If so, the trial court's judgment must be reversed. Otherwise, the judgment must be affirmed.

*Stephenson*, 125 Cal. App. 4th at 967. The insurer argued that there was no potential for coverage, because Guardado's injury was compensable under workers' compensation law and thus coverage was excluded under the policy's workers' compensation exclusion. *See id.* at 969. The appellate court agreed, determining that "[t]he trial court properly held defendant's policy unambiguously eliminated any potential of coverage for plaintiff in Guardado's civil action." *Id.* at 974. The *Stephenson* court noted that the duty to defend is broader than the duty to indemnify, but stated that "[w]ithout the possibility of coverage under the policy, there is generally no duty to defend." *Id.* at 970. The appellate court held that, "Since defendant's policy is not ambiguous and no potential for coverage of Guardado's civil action existed under it, we affirm the trial court's judgment." *Id.* at 966.

This Court similarly concludes that there was no potential for coverage of Underlying Action, and there is no reasonable possibility that Ford could amend its counterclaim to allege facts showing a potential for coverage. Employers' motion to dismiss Claim 1 of the counterclaim, seeking declaratory relief that Employers had a duty to defend the Underlying Action, is GRANTED, and Claim 1 of the counterclaim is DISMISSED WITHOUT LEAVE TO AMEND.

United States District Court
Northern District of California

### b.  Employment Practices Exclusion

Employers asserts that dismissal of Claim 1 also is warranted under the employment practices exclusion.  That provision excludes from coverage "[d]amages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions. . . ."  Policy at 20.  Employers argues that this exclusion applies based on allegations in the Underlying Action indicating that Leet shot Souto because Souto terminated him.  In opposition, Ford argues that it is unknown whether Leet killed Souto because of his termination or for some other reason.  In its reply, Employers contends that the factual allegations of the complaint in the Underlying Action unequivocally state that Souto's killing arose from his termination of Leet, and that Ford's unsupported speculation that Leet could have acted for some other reason do not establish a potential for coverage.  Employers cites *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995), for the proposition that "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date."

After carefully reading the complaint in the Underlying Action, the Court finds that although the facts alleged therein certainly suggest that Leet killed Souto because of the termination, they do not conclusively establish Leet's motivation.  Accordingly, the Court cannot determine as a matter of law that the employment practices exclusion eliminated any potential for coverage with respect to the Underlying Action.

Employers' motion to dismiss Claim 1 of the counterclaim based on the employment practices exclusion is DENIED.

### c.  Lack of Formal Service

Employers contends that Claim 1 should be dismissed based on Ford's admission in its answer that it was not formally served with the complaint in the Underlying Action.  *See* Ans. ¶ 14.  The cited paragraph of Ford's answer states as follows:  "THE FORD STORE admits that the summons and complaint in the Underlying Action were not served on its agent for service of process, but that a copy of the complaint was provided to THE FORD STORE's counsel."  *Id.*

16

1    Employers contends that absent formal service, Ford had no obligation to respond to the

2    Underlying Complaint, and therefore was not entitled to a defense from Employers.

3         Ford points out that Employers has not cited any case law or policy provision providing

4    that Employers' duty to defend a civil case in which Ford has responded arises only upon the

5    formal service of the civil case on Ford.  Absent citation to some authority, either in the law or the

6    Policy, Employers' motion to dismiss Claim 1 of the counterclaim based on the lack of formal

7    service is DENIED.

                         **3.      Conclusion**

9         In conclusion, Employers' motion to dismiss Claim 1 of the counterclaim based on the

10   workers' compensation exclusion is GRANTED WITHOUT LEAVE TO AMEND.  The motion

11   to dismiss Claim 1 of the counterclaim based on the employment practices exclusion and the lack

12   of formal service is DENIED.

13        **B.      Claim 2 for Declaratory Relief – Duty to Indemnify**

14        Claim 2 seeks a declaration that Employers had a duty to indemnify Ford in the Underlying

15   Action.  CC ¶¶ 40-41.  Ford seeks reimbursement of the monies it paid to settle the Underlying

16   Action.  *Id.*

17            **1.      Law on Duty to Indemnify**

18        While an insurer has a broad duty to defend the insured against third party claims that are

19   even potentially within the policy's coverage, "[t]he duty to indemnify is much narrower." *Blue*

20   *Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 497 (2001).  "[T]he insurer only has a duty to

21   indemnify the insured for covered claims, and no duty to pay for noncovered claims because the

22   insured did not pay premiums for such coverage." *Id.* at 502-03.

23            **2.      Analysis**

24        As discussed above, the Court concludes as a matter of law that coverage of the

25   Underlying Action was barred by the workers' compensation exclusion.  Because there was no

26   coverage, there was no duty to indemnify.  This defect in Claim 2 could not be cured by

27   amendment.

28

United States District Court
Northern District of California

1

### 3.      Conclusion

2      Employers' motion to dismiss Claim 2 of the counterclaim is GRANTED WITHOUT

3   LEAVE TO AMEND.

4      **C.      Claim 3 for Breach of Contract**

5      Claim 3 is for breach of contract.  Ford claims that Employers breached the Policy in the

6   way it handled the WC Case, and in the way it handled the subsequent Underlying Action.  CC ¶

7   47.  The Court addresses those alleged breaches in turn, as follows.

8      **1.      Alleged Breach Re Workers' Compensation Case**

9      As to the WC Case, Ford alleges that Employers breached the Policy by:  "Assigning WC

10   Defense Counsel to defend both EMPLOYERS and THE FORD STORE in the WC Case without

11   THE FORD STORE's consent"; "Providing a deficient defense in the WC Case"; and "Failing to

12   settle or otherwise dispose of the claims of all potential dependents in connection with the WC

13   Case."  CC ¶ 47.

14      Employers contends that its only obligation to Ford was to appoint competent defense

15   counsel, and that it satisfied that obligation when it appointed M&F.  Employers relies on *Merritt*

16   *v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 881 (1973), which held, "Having chosen competent

17   independent counsel to represent the insured in litigation, the carrier may rely upon trial counsel to

18   conduct the litigation, and the carrier does not become liable for trial counsel's legal malpractice."

19   The Court cannot assume at the pleading stage that M&F was competent.  Employers asserts that

20   an attorneys' competence is presumed, citing to the Supreme Court's discussion of the *Strickland*

21   standard in a habeas case.  *See Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  Employers

22   has not cited any authority suggesting that the presumption of competence applicable in a habeas

23   case would extend to an insurance case.  Moreover, in a habeas case, the petitioner has the

24   opportunity to rebut the presumption of competence.  *See id.*  Here, Ford has alleged facts giving

25   rise to a reasonable inference that M&F was not competent, including counsel's failure to

26   investigate other possible dependents and failure to make a timely motion to change venue.  CC ¶¶

27   12-14.

28      Moreover, one of Ford's primary criticisms of Employers' handling of the WC Case is

Employers' appointment of counsel to represent both Ford and Employers without obtaining Ford's consent to the dual representation. *Merritt* does not address the issue of consent to dual representation. "When an insurer undertakes defense of its insured, an attorney selected by the insurer provides dual representation to the insured and the insurer." *Swanson v. State Farm Gen. Ins. Co.*, 219 Cal. App. 4th 1153, 1162 (2013). "In this usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them." *Id.* (internal quotation marks and citation omitted). However, "attorneys are under an ethical stricture to avoid conflicts of interest," and may not represent more than one client where the interests of the client potentially conflict, absent informed written consent from each client. *Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 79 Cal. App. 4th 114, 132 (2000). "A disqualifying conflict exists if insurance counsel had incentive to attach liability to the insured." *Id.* (internal quotation marks, citation, and alterations omitted). "The test is whether the conflict precludes the insurer-appointed defense counsel from presenting a quality defense for the insured." *Id.* (internal quotation marks and citation omitted).

Ford asserts that M&F simply settled the WC Case, thus benefitting Employers, without considering whether there were other potential dependents who might have claims against Ford. Ford submits a letter from M&F dated November 2, 2021, stating that M&F represented only Employers in the WC Case, and did not represent Ford. *See* Forsyth Decl. Exh. A, ECF 26-1. The Court cannot consider the letter in evaluating Employers' motion to dismiss, as the letter is extrinsic to the counterclaim and does not constitute material suitable for judicial notice or incorporation by reference. However, the Court concludes that the counterclaim itself alleges facts sufficient to give rise to a reasonable inference of conflict, including M&F's failure to investigate the existence of other dependents and failure to communicate with Ford.

In conclusion, the Court finds that Ford adequately has alleged that Employers breached its Policy obligations with respect to the WC Case. Accordingly, Employers' motion to dismiss Claim 3 of the counterclaim is DENIED to the extent it is based on the WC Case.

### 2.     Alleged Breach Re Underlying Action

As to the Underlying Action, Ford alleges that Employers breached the Policy by:

1    "Delaying and failing or refusing to timely investigate the Underlying Action and complete its

2    coverage analysis"; "Denying THE FORD STORE the rights to benefits to which THE FORD

3    STORE was entitled under the Policy in connection with the Underlying Action, including the

4    rights to defense and indemnity"; and "Taking coverage positions contrary to controlling law in

5    connection with the Underlying Action."  CC ¶ 47.

6         As discussed above, the Court concludes as a matter of law that there was no potential for

7    coverage of the Underlying Action.  Since there was no potential for coverage, Employers' denial

8    of coverage and other alleged conduct did not breach the Policy.

9         Employers' motion to dismiss Claim 3 is GRANTED WITHOUT LEAVE TO AMEND to

10   the extent it is based on the Underlying Action.

11              **3.      Conclusion**

12        Employers' motion to dismiss Claim 3 of the counterclaim is GRANTED WITHOUT

13   LEAVE TO AMEND to the extent it is based on the Underlying Action, and DENIED to the

14   extent it is based on the WC Case.  At the hearing, the Court observed that the claim for breach of

15   contract relating to the WC Case could give rise to damages in the amount of defense and

16   indemnity costs expended in the Underlying Action, because Ford contends that absent

17   Employers' breach of its obligations regarding the WC Case, the Underlying Action would not

18   have been filed.  The Court's partial dismissal of Claim 3 does not preclude that damages theory.

19         **D.      Claim 4 for Breach of the Implied Covenant of Good Faith and Fair Dealing**

20        Claim 4 is for breach of the implied covenant of good faith and fair dealing.  Under

21   California law, there are two elements for a breach of the implied covenant of good faith and fair

22   dealing in the insurance context: "(1) benefits due under the policy must have been withheld and

23   (2) the reason for withholding benefits must have been unreasonable or without proper cause."

24   *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1151 (1990).

25        As discussed above, there was no breach of the Policy with respect to the Underlying

26   Action.  Thus, it follows that there was no breach of the implied covenant of good faith and fair

27   dealing with respect to the Underlying Action.

28        Ford has alleged a breach of the Policy with respect to the WC Case, satisfying the first

United States District Court
Northern District of California

1   element of the claim for breach of the implied covenant.  The Court therefore must determine

2   whether Ford has pled the second element of the claim.  Ford alleges that Employers assigned

3   M&F to represent both Ford and Employers without Ford's consent.  CC ¶ 53.  As discussed

4   above, the counterclaim gives rise to a reasonable inference of a conflict between Ford and

5   Employers that would have required Ford's consent to the dual representation or appointment of

6   independent counsel to represent Ford.  However, Employers allegedly based its claims-handling

7   decisions on the desire to reduce or avoid its obligations to Ford and Employers allegedly

8   preferred its own interests over the interests of Ford.  *Id.*  The Court finds these allegations

9   sufficient to state a claim for breach of the implied covenant with respect to Employers' handling

10  of the WC Case.

       Employers' motion to dismiss Claim 4 of the counterclaim is GRANTED WITHOUT

11

12  LEAVE TO AMEND to the extent it is based on conduct relating to the Underlying Action, and

13  DENIED to the extent it is based on conduct relating to the WC Case.

14  **IV.   ORDER**

15       (1)   Employers' motion to dismiss the counterclaim is GRANTED IN PART AND

16             DENIED IN PART, WITHOUT LEAVE TO AMEND, as follows:

17             (a)   The motion is GRANTED WITHOUT LEAVE TO AMEND as to Claim 1,

18                   Claim 2, Claim 3 to the extent it is based on the Underlying Action, and

19                   Claim 4 to the extent it is based on the Underlying Action; and

20             (b)   The motion is DENIED as to Claim 3 to the extent it is based on the WC

21                   Claim, and Claim 4 to the extent it is based on the WC Claim.

22       (2)   This order terminates ECF 20.

23

24  Dated:  June 23, 2022

25                                               _____

26                                               BETH LABSON FREEMAN
                                                 United States District Judge
27

28

United States District Court
Northern District of California